**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MURIEL KARLIN,<br><br>Plaintiff,<br><br>vs.<br><br>COTIVITI HOLDINGS, INC., DAVID L. SWIFT, JAMES E. PARISI, CHRISTOPHER PIKE, RUBE JOSE KING-SHAW, JR., R. HALSEY WISE, KENNETH R. GOULET, JOHN MALDONADO, J. DOUGLAS WILLIAMS, MALA ANAND, and ELIZABETH CONNOLLY ALEXANDER,<br><br>Defendants. | ) | Case No.<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Muriel Karlin ("Plaintiff"), by her undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Cotiviti Holdings, Inc., ("Cotiviti" or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §§ 240.14a-9, 244.100 arising out of the definitive merger agreement between and among Cotiviti and Verscend Technologies, Inc., an affiliate of Veritas Capital (collectively, "Veritas") (the "Merger Agreement").

2. On June 19, 2018, the Company and Veritas entered into the Merger Agreement, and issued a joint press release announcing that the merger, in which, each share of Company common stock will be converted into the right to receive $44.75 in cash (the "Proposed Transaction"). The Merger represents an equity valuation of approximately $4.9 billion.

3. On July 23, 2018, the Company filed a Form DEFM14A Definitive Proxy Statement (the "Proxy") with the SEC designed to convince Cotiviti stockholders to approve the Proposed Transaction. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; (ii) the valuation analyses conducted by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and William Blair & Company, L.L.C. ("William Blair") to support their fairness opinions; and (iii) the narrative background before and after entry into the Merger Agreement.

4. The special meeting of Cotiviti stockholders to vote on the Proposed Transaction will be held on August 24, 2018 (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Cotiviti's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## PARTIES

6. Plaintiff is, and has been at all relevant times, a stockholder of Cotiviti.

7. Cotiviti is a corporation organized and existing under the laws of the State of

Delaware. It maintains its principal executive offices at 115 Perimeter Ctr. Place, The South Terraces, Suite 700, Atlanta, Georgia, 30346. The Company's common stock is listed on the New York Stock Exchange under the ticker symbol "COTV."

8. Defendant David Swift has served as Chairman of the Board since November 2014. Swift is an Executive Business Partner at Advent International Corporation ("Advent"), which holds an aggregate of approximately 44% of the combined voting power of the Company's common stock.

9. Defendant James E. Parisi has served as a director of the Company since May 2015.

10. Defendant Christopher Pike has served as a director of the Company since July 2012. Defendant Pike is a managing partner at Advent.

11. Defendant Rube Jose King-Shaw, Jr. has served as a director of the Company since August 2016.

12. Defendant R. Halsey Wise has served as a director of the Company since December 2017.

13. Defendant Kenneth R. Goulet has served as a director of the Company since December 2015.

14. Defendant John Maldonado has served as a director of the Company since July 2012 and is a managing partner at Advent.

15. Defendant J. Douglas Williams has served as the Company's Chief Executive Officer ("CEO") and a director of the Company since May 2014.

16. Defendant Mala Anand has served as a director of the Company since December 2016.

17. Defendant Elizabeth Connolly Alexander has served as a director of the Company since July 2012.

18. The Defendants described in ¶ 8 through ¶ 17 are referred to herein as the "Individual Defendants."

19. Collectively, Cotiviti and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cotiviti is a corporation established under the laws of this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

23. On June 19, 2018, the Company and Veritas issued a joint press release announcing the Proposed Transaction. The Press Release read in relevant part:

> ATLANTA & WALTHAM, Mass.--(BUSINESS WIRE)--Cotiviti Holdings, Inc. (NYSE: COTV) ("Cotiviti"), a leading provider of payment accuracy and analytics-driven solutions focused primarily on the healthcare industry, and Verscend Technologies, Inc. ("Verscend"), a portfolio company of Veritas

Capital ("Veritas") and a leader in data-driven healthcare solutions, announced today that they have entered into a definitive agreement whereby Verscend has agreed to acquire Cotiviti for $4.9 billion in cash.

Under the terms of the agreement, Cotiviti shareholders will receive $44.75 in cash per share of Cotiviti common stock, and Verscend will assume all of Cotiviti's outstanding debt, resulting in an enterprise value of approximately $4.9 billion. The offer price represents a 32% premium to Cotiviti's unaffected share price as of June 4, 2018 and a 136% premium to the initial public offering price of Cotiviti's common stock.

The combined business will operate as a private healthcare information technology company with unique, data-driven capabilities. Together, the companies are expected to have greater impact in the healthcare IT market by increasing affordability, reducing waste and improving outcomes and quality as well as offer new opportunities to create substantial value for clients, including complementary solutions across multiple intervention points in the payment process.

"We are thrilled to partner with Cotiviti, which has become an important player in the growing and increasingly important and complex healthcare payment accuracy space," said Emad Rizk, M.D., President and CEO of Verscend. "Together, Verscend and Cotiviti will offer our clients a comprehensive, integrated end-to-end solution to address the estimated $900 billion in healthcare waste and abuse across the claims payment and care continuum. Financial data coupled with clinical data from our Risk Adjustment, Quality, and Population Health lines of business offer increased value to commercial payers, government entities, and providers."

Doug Williams, CEO of Cotiviti said, "We expect today's transaction to deliver compelling value for Cotiviti shareholders and allow us to continue to execute our strategic growth plan. We are excited to be combining with Verscend, and believe that together we will create an organization with robust data assets, expanded offerings and innovative technologies that will allow us to bring a broader portfolio of new and existing payment accuracy analytical solutions to our valued customers."

"We believe Cotiviti is a perfect fit with both our investment strategy and with Verscend, and we look forward to taking the platform to the next level through this exciting combination," said Ramzi Musallam, CEO and Managing Partner of Veritas Capital. "The aggregation of Cotiviti and Verscend's complementary data sets and analytical capabilities, coupled with the unrelenting focus and commitment to support our customers, is expected to further drive value-added solutions and differentiated product development."

> Veritas Capital has a proven track record of driving growth for companies within the Healthcare Technology IT space, as illustrated by the firm's recent acquisition of GE Healthcare's Value-Based Care Division and investments in Truven Health Analytics and Verscend Technologies. Veritas has a deep understanding of the urgent need to digitalize our healthcare system and brings a culture of intense customer focus and a drive for growth through focused R&D and product innovation.
>
> **Transaction Details**
>
> The transaction, which was unanimously approved by Cotiviti's Board of Directors, is expected to close during the fourth quarter of 2018. Closing of the transaction is subject to the approval of Cotiviti shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.
>
> Advent International has entered into a voting agreement whereby it has agreed to vote shares representing approximately 44% of the Company's voting power in favor of the transaction.

**The Proxy Misleads Cotiviti Stockholders by Omitting Material Information**

24. On July 23, 2018, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by the Company's financial projections, the financial analyses conducted by Goldman and William Blair, and the existence of standstill provisions that would work to foreclose potentially superior alternatives to the Merger.

***Material Omissions Concerning the Company's Financial Projections***

25. The Proxy discloses projections of the non-GAAP accounting metrics Adjusted EBITDA and Free Cash Flow, but does not disclose sufficient metrics to reconcile Adjusted EBITDA back to Total Revenue or other GAAP metrics.

26. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading..

27. The Proxy also fails to disclose the line items underlying Free Cash Flow and Adjusted EBITDA necessary to reconcile it to GAAP measures, including (i) net income, (ii) depreciation and amortization, (ii) capital expenditure, (iii) interest expense, and (iv) other non-operating income or expenses.

28. Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Cotiviti stockholders.

29. These projections were provided to William Blair, Goldman, and the Board, and used by William Blair and Goldman for the purpose of creating fairness opinions that could then be used in soliciting stockholder approval of the Proposed Transaction. Because these analyses were presented to the Cotiviti stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

***Material Omissions Regarding Free Cash Flows and the Advisors' Financial Analyses***

30. The Proxy discloses the Company management's projections of Free Cash Flow for the years 2017 through 2022, with Free Cash Flow defined as Adjusted EBITDA less cash taxes, interest expense and capital expenditure.

31. While both Goldman and William Blair conducted *Discounted Cash Flow Analyses*, the advisors used separate cash flow inputs. Goldman used "the estimates of the **unlevered free cash flow** to be generated by the Company for the period from April 1, 2018 to

December 31, 2022." However, William Blair used "the Company's projected **free cash flows** for CY 2018E through CY 2022E."

32. The difference between unlevered free cash flows and free cash flows is material. Unlevered free cash flow represents the cash flows available to the business before paying its financial obligations, while free cash flows describes cash flows available after the business has paid its financial obligations, including interest expenses. In the 10-Q filed July 26, 2018, Cotiviti disclosed that it had interest expense of approximately $10 million for the three months ending June 30, 2018 alone, while the projected free cash flow for the Company in all of 2018 is only approximately $180 million. Without the disclosures of unlevered free cash flows used by William Blair, Cotiviti's stockholders are unable to fully understand its analyses and, thus, are unable to determine what weight, if any, to place on Goldman and William Blair's fairness opinions in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Cotiviti's stockholders.

***Material Omissions Regarding the Background of the Sales Process***

33. The Proxy also fails to disclose or misstate material information relating to the sales process leading up to the Proposed Transaction.

34. The Proxy fails to disclose whether the confidentiality agreements entered into with at least seven potential strategic or financial partners apart from Veritas contained standstill provisions, or so-called "don't-ask-don't-waive" ("DADW") standstill provision that presently preclude potential bidders from making a topping bid for the Company.

35. Despite this omission, the Proxy discloses that a Party D refused to enter into a confidentiality agreement with the Company that included "customary provisions" including a

standstill provision. Thus it is extremely likely that the other confidentiality agreements entered into with other parties contained at least a standstill provision, if not a DADW standstill provision.

36. Such information is material to Cotiviti stockholders as a reasonable stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

37. DADW standstill provisions add an additional restriction to the typical standstill restriction that forbids a bidder from making another bid for the Company. DADW standstill provisions prevent a potential bidder from even privately requesting a waiver of the standstill provision from the Board, and thus prevent the communication of the existence of potentially superior offers. In agreeing to such a provision, the Board would have willfully blinded itself to offers that would provide stockholders with greater value than the Merger Consideration.

38. If such confidentiality agreements do contain standstill or DADW standstill provisions, then as many as forty-nine potential acquirers could be forbidden from submitting a potentially superior alternative to Cotiviti's Board and stockholders.

39. The statements in the Proxy are misleading because they provide shareholders a materially incomplete and distorted picture of the sales process underlying the Proposed Transaction, the various alternatives available to (and considered by) defendants other than the Proposed Transaction, and the efforts taken (or not taken) to ensure that no conflicts of interest tainted the negotiation process, rendering it unfair to Plaintiff. Without this omitted information, 8point3 shareholders cannot make a fully-informed decision whether to vote to approve the Proposed Transaction

40. Defendants' failure to provide Cotiviti stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Proxy false and/or materially misleading.

41. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein

42. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cotiviti

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cotiviti is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Cotiviti within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cotiviti and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 7, 2018

Respectfully submitted,

**O'KELLY ERNST & JOYCE, LLC**

By: /s/ *Ryan M. Ernst*
Ryan M. Ernst (No. 4788)
Daniel P. Murray (No. 5785)
901 Market Street
Suite 1000
Wilmington, DE 19801
Tel: (302) 778-4000
Fax: (302) 295-2873
rernst@oelegal.com
dmurray@oelegal.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*